UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES THORBURN, DEBRA K. THORBURN, and TULLOSS SPRINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT FISH, LINDA FISH, UP DEVELOPMENT FRANKLIN, LLC, and BROTHERS LAND TRUST, LLC, <br><br> Defendants. | Case No. 3:13-cv-1431 <br> Judge Trauger |

## MEMORANDUM

Pending before the court are two motions. Plaintiffs Tulloss Springs, LLC ("Tulloss Springs"), James Thorburn, and Debra K. Thorburn (together, the "plaintiffs") have filed a Motion for Partial Summary Judgment (Docket No. 49), to which the defendants have filed a Response in opposition (Docket No. 53), and the plaintiffs have filed a Reply (Docket No. 59). Defendants Scott Fish, Linda Fish, UP Development Franklin, LLC ("UP Franklin"), and Brothers Land Trust, LLC ("BLT") (together, the "defendants") have filed a Motion to Amend/Correct their Answer to the Complaint (Docket No. 55), to which the plaintiffs have filed a Response in opposition (Docket No. 60), and the defendants have filed a Reply (Docket No. 63). For the reasons stated herein, the court will deny without prejudice the defendants' Motion for Leave to Amend/Correct their Answer and will defer consideration of the plaintiffs' Motion for Partial Summary Judgment.

## BACKGROUND

The parties in this action appear to have a long history of business dealings, some of which relate to the property at issue here and some of which do not. In the interest of brevity, the court will limit its discussion of the parties' background to the facts relevant to the pending motions.

I. **Relevant Factual Background[1]**

**A. Before the Purchase Agreement**

Prior to 2011, Tulloss Springs owned real property located at 1071 Tulloss Road, Franklin, Tennessee (the "Property"). The Thorburns are members of Tulloss Springs and residents of Nebraska. Tulloss Springs' ownership of the Property was subject to a deed of trust (the "First Deed of Trust") securing a promissory note (the "First Promissory Note"), dated January 14, 2005, in the original principal amount of $1,387,500. The original owner of the First Promissory Note was Cumberland Bank; the First Promissory Note was later assigned to GreenBank. In support of the First Promissory Note, the Thorburns executed personal guaranties of indebtedness, promising to fulfill the obligations of the First Promissory Note in the event of Tulloss Springs' default (the "Thorburn Guaranties").

Sometime in 2011, Tulloss Springs defaulted on the First Promissory Note. On August 22, 2011, Tulloss Springs, the Thorburns, and the Fishes entered into a Forbearance Agreement with GreenBank (the "Forbearance Agreement").[2] (Docket No. 1, Ex. E.) Pursuant to the

---

[1] Unless otherwise noted, the facts are drawn from the plaintiffs' Statement of Undisputed Material Facts (Docket No. 49, Ex. 2) and the defendants' responses thereto (Docket No. 52), as well as the exhibits attached to the parties' submissions (Docket No. 1, Exs. E,F, H, I, J; Docket No. 53, Ex. 1). The court notes that it is undisputed that true and correct copies of certain documents are attached to the Complaint. (Docket No. 1, Exs. H, I, J.)

[2] Although neither party explains the relationship in detail, it appears that the Fishes and the Thorburns were involved in unspecified business dealings for some period of time prior to the execution of the Forbearance Agreement.

Forbearance Agreement, the Fishes executed personal guaranties, promising to fulfill the obligations of the First Promissory Note in the event of Tulloss Springs' default (the "Fish First Promissory Note Guaranties"). The Forbearance Agreement states that, as of August 22, 2011, the amount owed under the First Promissory Note was $1,259.064.05 plus GreenBank's attorney's fees, expenses, and costs. The Forbearance Agreement further provides that GreenBank consented to a sale of the Property to a new entity to be formed by Mr. Fish.

### B. The Tennessee Farm Purchase Agreement

On September 8, 2011, Tulloss Springs and UP Franklin (the new entity formed by Mr. Fish) entered into a Tennessee Farm Purchase Agreement (the "Purchase Agreement"). The Purchase Agreement, which is incorporated into and attached to the Complaint, provides that UP Franklin, subject to certain terms and conditions, agreed to purchase the Property. (Docket No. 1, Ex. F at Section 1.01.) The Purchase Agreement further provides:

> The purchase price . . . for the Property shall be the amount of indebtedness owed GreenBank ("Lender") evidenced by a Promissory Note of U.P. Development Tulloss Road, LLC [a/k/a Tulloss Springs, LLC], dated January 14, 2005 in the original principal amount of $1,387,500.00, as amended and modified plus an amount so that on the date of closing the total purchase price of the property shall be ONE MILLION SIX HUNDRED THOUSAND AND NO/100 DOLLARS ($1,600,000.00). The amount to be outstanding as of August 5, 2011 is $1,255,787.03, plus Lender's attorneys [*sic*] fees, expenses and costs.

(*Id.*)

The Purchase Agreement further states that the purchase price will be remitted in full by (1) a deposit of $10,000.00; (2) UP Franklin's assumption of the First Deed of Trust and First Promissory Note in favor of GreenBank, assessed in the amount of $1,255,787.03 as of August 5, 2011, plus other costs, to be applied toward payment of the purchase price; (3) a promissory note in the amount of $325,502.82 to be owned by Tulloss Springs, secured by a pledge and additional deed of trust upon the property, as well as by the personal guaranties of the Fishes;

3

and (4) the conveyance to the plaintiffs of one lot from the Property to be selected by the plaintiffs at a specific point in time set forth by the general warranty deed ("General Warranty Deed").

Pursuant to the Purchase Agreement, UP Franklin executed a promissory note dated September 8, 2011, in the principal amount of $325,502.82 (the "Second Promissory Note") in favor of Tulloss Springs. UP Franklin also executed a deed of trust securing the note (the "Second Deed of Trust"), which encumbered the Property. (Docket No. 1, Exs. H, I.) The Second Promissory Note provides for principal payments in the amount of $50,000.00 plus accrued interest at a rate of 5% per annum, to be made payable at six month increments after closing, and the remainder to become due and payable exactly two years after closing. (*Id.*, Ex. H.)

Further, pursuant to the Purchase Agreement, the Fishes executed a "Continuing Guaranty" related to the Second Promissory Note. (Docket No. 1, Ex. J ("Fish Second Deed of Trust Guaranty").) The guaranty states:

> As an inducement to cause Lender to extend credit and enter into that certain Purchase Agreement, Second Deed of Trust and Deed of Trust Promissory Note of even date, to the Borrower named herein [UP Franklin], without which Guaranty the Borrower would be unable to obtain credit from the Lender or any other financial institution, and for other valuable consideration . . . the Guarantor [Scott Fish and Linda Fish] agrees with the Lender that:
>
> . . . .
>
> 3. **Continuing, Unconditional and Absolute Guaranty.** The Guarantor hereby guarantees to Lender the full and timely payment and performance of the Obligations and agrees that the Guarantor's guarantee of the Obligations is continuing, absolute and unconditional.
>
> . . . .
>
> 5. **Primary Liability of Guarantor.** This Guaranty constitutes a guarantee of payment and performance and not of collection. The liability of Guarantor under

4

> this Guaranty shall be direct and immediate and not conditional or contingent
> upon the pursuit of any remedies against Borrower or any other co-Borrower,
> Endorser, Guarantor or other entity or person . . . .

(*Id.*)

### C. After the Sale

After the close of the Purchase Agreement, UP Franklin (which appears to be owned solely by the Fishes) owned the Property, subject to two mortgages. The first mortgage, in the original principal amount of over $1,300,000.00, was owned by GreenBank and secured by a deed of trust to the Property. The first mortgage was also guaranteed personally by the Thorburns and the Fishes. The second mortgage, in the amount of $325,502.82, was owned by Tulloss Springs, secured by the Second Deed of Trust, and guaranteed personally by the Fishes.

According to the Complaint, the balance of the Second Promissory Note matured on September 11, 2013. In October 2013, Mr. Fish formed BLT, a Florida limited liability corporation. Mr. Fish is the sole managing member of BLT. In December 2013, BLT purchased the First Promissory Note from its owner and, on December 4, 2013, the First Deed of Trust was assigned to BLT. On December 5, 2013, BLT demanded payment of the First Promissory Note from the Thorburns and Tulloss Springs. On December 10, 2013, BLT commenced foreclosure on the Property (which is still owned by UP Franklin, another entity that is allegedly owned by Mr. Fish).[3]

## II. <u>Procedural Background</u>

The plaintiffs filed this action against the defendants on December 18, 2013, asserting a variety of claims including, *inter alia*, (1) a claim for a money judgment against UP Franklin based on its failure to repay the Second Promissory Note and (2) a claim for money judgment

---

[3] Simply put, according to the allegations of the Complaint, Mr. Fish (through his alleged alter ego, BLT) is essentially foreclosing as a lender on his own property.

against the Fishes pursuant to the Fish Second Deed of Trust Guaranty (the "Second Promissory Note claims"). [4] In short, the plaintiffs allege in this action that the defendants have engaged in a fraudulent scheme—foreclosure by BLT (an alleged alter ego of Mr. Fish) on a property owned by UP Franklin (a second alleged alter ego of Mr. Fish)—in order to acquire the Property free and clear of the Second Deed of Trust and to avoid repaying the Second Promissory Note.

The plaintiffs have filed a Motion for Partial Summary Judgment as to the Second Promissory Note claims. The defendants have opposed the plaintiffs' motion on the ground that the plaintiffs' motion is premature. The defendants further argue that, because they propose to add a counterclaim that "negat[es] the basis for Tulloss Spring's [*sic*] motion for partial summary judgment," they should be entitled to engage in discovery related to the counterclaim, and a ruling on the plaintiffs' motion for summary judgment should be deferred. (Docket No. 51.)

Five days after they opposed the plaintiffs' pending summary judgment motion, the defendants filed a Motion to Amend/Correct their Answer, attaching their proposed amended pleading. (Docket No. 55.) The proposed amendment includes two counterclaims: one filed by BLT, seeking a money judgment against the Thorburns related to UP Franklin's default on the First Promissory Note and the Thorburn Guaranties; and a second counterclaim by the Fishes and UP Franklin, alleging fraudulent misrepresentations committed by the plaintiffs related to the

---

[4] Additional claims include (3) a specific performance claim against UP Franklin for conveyance of a portion of the property pursuant to the Purchase Agreement and related General Warranty Deed; (4) a claim for money judgment against UP Franklin related to its agreement to hold Tulloss Springs harmless; (5) a claim for money judgment against the Fishes pursuant to the Fish Second Deed of Trust Guaranties as to UP Franklin's performance under the Purchase Agreement; (6) a claim for money judgment against UP Franklin for breach of the duty of good faith and fair dealing; (7) a declaratory judgment that the Fishes and BLT are alter egos of UP Franklin; (8) a declaratory judgment that the First Promissory Note has been paid and the First Deed of Trust has been satisfied; (9) fraud; (10) wrongful foreclosure; (11) money judgment against UP Franklin for contribution and indemnification; and (12) injunctive relief. As to the plaintiffs' request for injunctive relief, after briefing and a hearing, the court issued an Order granting the plaintiffs a preliminary injunction on May 29, 2014. (Docket No. 68).

execution of the Purchase Agreement and certain money transactions among the parties prior to the execution of the Purchase Agreement. (Docket No. 55, Ex. 1.)

On July 18, 2014, the defendants filed a Motion to Amend the court's Case Management Order, seeking to extend deadlines for discovery. (Docket No. 71.) Specifically, the defendants request an extension of six months to allow for discovery related to their proposed counterclaims. The plaintiffs have not opposed the motion.

## ANALYSIS

Because the viability of the defendants' proposed second counterclaim necessarily impacts the enforceability of the Purchase Agreement and, therefore, the merits of the plaintiffs' Motion for Partial Summary Judgment, the court will first address the defendants' Motion to Amend.

**I.     Defendants' Motion to Amend**

  **A. Standard**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent

with the spirit of the Federal Rules.

*Id.* at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Id.*; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-82 (6th Cir. 1993); *see Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Kottmyer v. Maas*, 436 F.3d 684, 691-92 (6th Cir. 2006).

Here, the plaintiffs argue that the proposed second counterclaim is futile.[5] Specifically, the plaintiffs argue that the proposed second counterclaim would not survive a motion to dismiss because (1) the defendants have failed to plead their fraud claim with the specificity required by Fed. R. Civ. P. 9(b); (2) a claim based upon alleged fraud is barred by the "integration clause" of the Purchase Agreement; and (3) the defendants' second counterclaim is barred by *res judicata*.

**B. Futility**

1. <u>Failure to State a Fraud Claim with Requisite Particularity</u>

Rule 9(b) of the Federal Rules of Civil Procedure states that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." The Sixth Circuit has explained the overarching purpose of Rule 9(b):

> [The rule] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: "to provide a defendant fair

---

[5] In their opposition to the defendants' Motion to Amend their Answer, the plaintiffs do not address the counterclaim alleged by BLT related to the payment due on the First Promissory Note. Accordingly, the court considers the request for leave to file the first proposed counterclaim to be unopposed.

8

notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 523 F.3d 496, 504 (6th Cir. 2008). "So long as a [claimant] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the [opposing party] to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444-45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Although considered a heightened pleading standard, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012).

Here, the defendants' proposed second counterclaim includes only vague and conclusory allegations regarding the alleged fraud perpetrated by the plaintiffs. For instance, the proposed counterclaim alleges that, at some unknown point in time, the Fishes "became involved in Tulloss Springs" and began to "regularly provide" the plaintiffs with "funds with which to pay the monthly obligations of the Tulloss Springs business operations," including loan payments owed to financial institutions. (Docket No. 55, Ex. 1.) These transactions, although "regular," took place at unknown times, in unknown amounts, and in unknown places. The proposed counterclaim further alleges that the Fishes did not receive monthly billing statements for the loan payments owed by Tulloss Springs, but, instead, "relied, to their detriment, on the

9

statements of Mr. Thorburn regarding the payments required." (*Id.*) The defendants allege that, "since making the various disbursements of funds to [the plaintiffs]" at unknown points of time and in unknown amounts, "Mr. Fish and Mrs. Fish have learned that the amounts represented as the monthly amounts owed . . . were inaccurate and exaggerated in amount, such that there resulted regular and large overpayments from Mr. Fish and Mrs. Fish" to the plaintiffs." (*Id.*) The defendants further plead that the plaintiffs "intentionally misrepresented the amount of the debts and expenses of Tulloss Springs in order to induce Mr. Fish and Mrs. Fish into paying greater amounts" to the plaintiffs, "which excess funds were converted and/or retained by and used for the benefit" of the plaintiffs. (*Id.*)

These allegations fail to rise to the level of specificity required by Rule 9(b) because they do not identify the time, place, or specific content of any of the alleged misrepresentations committed by the plaintiffs, as well any injury caused by the transactions induced by the misrepresentations. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993); *see Bledsoe*, 501 F.3d at 505 ("*At a minimum*, the complaint must allege the time, place, and content of the alleged misrepresentation on which [a claimant] relied.") (emphasis in original). The defendants argue in their Reply that their allegations are sufficient because additional information is only available in Tulloss Springs' business records, which are exclusively in the possession of the plaintiffs. (Docket No. 59.) However, the defendants fail to provide *any* particulars within the four corners of their pleading related to the alleged multiple transactions between themselves and the plaintiffs—transactions that allegedly involved large sums of money being disbursed to the plaintiffs.[6]

---

[6] The court is unpersuaded that, without Tulloss Springs' business records prior to the Purchase Agreement, the defendants are unable to even estimate times, dates, and contents of the

Moreover, although the defendants claim that the Fishes relied "to their detriment" on the alleged misrepresentations, the defendants fail to coherently identify the specific injury suffered by the Fishes, especially in light of the clear terms of the Purchase Agreement and the Forbearance Agreement, which expressly set forth the precise amount owed to lenders on the First Promissory Note as of specific points in time. (*See* Docket No. 1, Exs. E-F.) Allegations that the defendants "relied to their detriment" on the plaintiffs' misrepresentations are insufficient to enable the plaintiffs to prepare an informed pleading responsive to the defendants' allegations of fraud. *Bledsoe*, 501 F.3d at 509.

In short, the defendants have not provided allegations of even a single specific instance of fraud perpetrated by the plaintiffs, nor have they shown good cause as to why they are unable to provide particulars as to the alleged fraud. Consequently, the defendants' proposed second counterclaim fails to state a claim for fraud with the specificity required by Rule 9(b), and the defendants' Motion to Amend as to their proposed second counterclaim will be denied as futile.[7] However, the denial of this Motion will be without prejudice. The defendants will be given until August 15, 2014 to file a second motion for leave to amend their Answer.[8]

---

alleged misrepresentations and the "regular and large overpayments" related thereto with greater specificity.

[7] Because the court has concluded that the defendants' proposed second counterclaim fails to plead fraud with the required specificity, the court need not reach the plaintiffs' additional arguments as to the proposed counterclaim's futility. However, the court notes that the claims alleged in the 2007 state litigation between the parties, which the plaintiffs allege preclude the defendants' counterclaims, appear to involve an entirely different piece of real property and arise out of separate events and a separate transaction from the Purchase Agreement (which was signed over four years after the filing of the 2007 lawsuit). Moreover, the court notes that the "integration clause" of the Purchase Agreement does not appear to include a release of claims related to fraud or misrepresentation in the formation of the contract.

[8] The defendants' next proposed amended pleading should include the proposed first counterclaim alleged by BLT, which the court has deemed unopposed, as well as any exhibits, which appear to have been mistakenly excluded in the defendants' first Motion to Amend.

## II. The Plaintiffs' Motion for Partial Summary Judgment

The plaintiffs have filed a motion for partial summary judgment as to the Second Promissory Note claims. In light of the foregoing and the defendants' unopposed request for an extension of the discovery deadline, the court will defer consideration of the plaintiffs' Motion for Partial Summary.

## CONCLUSION

For the reasons stated herein, the defendants' Motion to Amend/Correct Answer to Complaint (Docket No. 55) will be denied without prejudice. The defendants will be granted leave to file a second Motion to Amend by August 20, 2014.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge