# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAMES THORBURN, DEBRA K. THORBURN, and TULLOSS SPRINGS, LLC, | )<br>)<br>) |
| Plaintiffs, | )    Case No. 3:13-cv-1431 |
| v. | )    Judge Trauger<br>)<br>) |
| SCOTT FISH, LINDA FISH, UP DEVELOPMENT FRANKLIN, LLC, and BROTHERS LAND TRUST, LLC, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM

Pending before the court is a Motion for Leave to File a Second Amended Answer and Counterclaim filed by the defendants, Scott and Linda Fish (Docket No. 76), which the plaintiffs have opposed (Docket No. 81). Also pending is the plaintiffs' Motion for Partial Summary Judgment (Docket No. 49). For the reasons discussed herein, the defendants' Motion for Leave to File a Second Amended Answer and Counterclaim will be denied and the plaintiffs' Motion for Partial Summary Judgment will be granted.

## BACKGROUND

On August 8, 2014, the court issued an Order denying without prejudice the defendants' first Motion to Amend their Answer and Counterclaim. (Docket No. 75.) In a Memorandum accompanying the August 8, 2014 Order, the court thoroughly detailed the factual and procedural events in the case, familiarity with which is assumed. (Docket No. 74.) For purposes of context, the court will briefly outline the facts underlying the parties' claims.

**I.**     **Relevant Factual Background**

1

### A. Tulloss Springs and the Property

The parties have a long history of business dealings, some of which relate to the property at issue here and some of which do not. The plaintiffs' claims, set forth in the Complaint (Docket No. 1), relate to real property located at 1071 Tulloss Road in Franklin, Tennessee (the "Property"). Plaintiffs James and Debra Thorburn are residents of Nebraska and members of plaintiff Tulloss Springs, LLC ("Tulloss Springs"). Prior to 2011, Tulloss Springs owned the Property, subject to a deed of trust ("First Deed of Trust") securing a promissory note, which was owned by Cumberland Bank and, later, GreenBank ("First Promissory Note"). In support of the First Promissory Note, the Thorburns executed personal guaranties of indebtedness, promising to fulfill the obligations of the First Promissory Note in the event of Tulloss Springs' default (the "Thorburn Guaranties").

Sometime in 2011, Tulloss Springs defaulted on the First Promissory Note. On August 22, 2011, Tulloss Springs, the Thorburns, and defendants Scott and Linda Fish entered into a Forbearance Agreement with GreenBank (the "Forbearance Agreement").[1] (Docket No. 1, Ex. E.) Pursuant to the Forbearance Agreement, the Fishes executed personal guaranties, promising to fulfill the obligations of the First Promissory Note in the event of Tulloss Springs' default (the "Fish First Promissory Note Guaranties"). The Forbearance Agreement states that, as of August 22, 2011, the amount owed under the First Promissory Note was $1,259,064.05 plus GreenBank's attorney's fees, expenses, and costs. The Forbearance Agreement further provides that GreenBank consented to a sale of the Property to a new entity to be formed by Mr. Fish.

### B. The Tennessee Farm Purchase Agreement

---

[1] Although neither party explains the relationship in detail, it appears that the Fishes and the Thorburns were involved in unspecified business dealings for some period of time prior to the execution of the Forbearance Agreement.

On September 8, 2011, Tulloss Springs and defendant UP Development Franklin, LLC ("UP Franklin") (the new entity formed by Mr. Fish) entered into a Tennessee Farm Purchase Agreement (the "Purchase Agreement"). The Purchase Agreement, which is incorporated into and attached to the Complaint, provides that UP Franklin, subject to certain terms and conditions, agreed to purchase the Property. (Docket No. 1, Ex. F at Section 1.01.) The Purchase Agreement provides that the purchase price for the Property is $1,600,000.00. It further states that the purchase price will be remitted by (1) a deposit of $10,000.00; (2) UP Franklin's assumption of the First Deed of Trust and First Promissory Note in favor of GreenBank, assessed in the amount of $1,255,787.03 as of August 5, 2011, plus other costs, to be applied toward payment of the purchase price; (3) a promissory note in the amount of $325,502.82 to be owned by Tulloss Springs, secured by a pledge and additional deed of trust upon the property, as well as by the personal guaranties of the Fishes; and (4) the conveyance to the plaintiffs of one lot from the Property to be selected by the plaintiffs at a specific point in time set forth by the general warranty deed ("General Warranty Deed").

Pursuant to the Purchase Agreement, UP Franklin executed a promissory note dated September 8, 2011, in the principal amount of $325,502.82 (the "Second Promissory Note") in favor of Tulloss Springs. UP Franklin also executed a deed of trust securing the note (the "Second Deed of Trust"), which encumbered the Property. (Docket No. 1, Exs. H, I.) The Second Promissory Note provides for principal payments in the amount of $50,000.00 plus accrued interest at a rate of 5% per annum, to be made payable at six-month increments after closing, and the remainder to become due and payable exactly two years after closing. (*Id.*, Ex. H.)

Further, pursuant to the Purchase Agreement, the Fishes executed a "Continuing Guaranty" related to the Second Promissory Note. (Docket No. 1, Ex. J ("Fish Second Deed of Trust Guaranty").) The guaranty promised "the full and timely payment and performance" of UP Franklin's obligations under the Second Promissory Note and stated that the guarantors' "guarantee of [UP Franklin's obligations] is continuing, absolute and unconditional." (*Id.*)

### C. After the Sale

Following the execution of the Purchase Agreement, UP Franklin (which appears to be owned solely by the Fishes) owned the Property, subject to two mortgages. The first mortgage, in the original principal amount of over $1,300,000.00, was owned by GreenBank and secured by a deed of trust to the Property. The first mortgage was also guaranteed personally by the Thorburns and the Fishes. The second mortgage, in the amount of $325,502.82, was owned by Tulloss Springs, secured by the Second Deed of Trust, and guaranteed personally by the Fishes.

According to the Complaint, the balance of the Second Promissory Note matured on September 11, 2013. In October 2013, Mr. Fish formed defendant Brothers Land Trust, LLC ("BLT"), a Florida limited liability corporation. Mr. Fish is the sole managing member of BLT. In December 2013, BLT purchased the First Promissory Note from its owner and, on December 4, 2013, the First Deed of Trust was assigned to BLT. On December 5, 2013, BLT demanded payment of the First Promissory Note from the Thorburns and Tulloss Springs pursuant to the Thorburn Guaranties. On December 10, 2013, BLT commenced foreclosure on the Property (which is still owned by UP Franklin, another entity that is allegedly owned by Mr. Fish). Simply put, according to the allegations of the Complaint, Mr. Fish (through his alleged alter ego, BLT) is essentially foreclosing as a lender on his own property.

## II. Procedural Background

4

The plaintiffs filed this action on December 18, 2013, asserting a variety of claims including, *inter alia*, (1) a claim for a money judgment against UP Franklin based on its failure to repay the Second Promissory Note and (2) a claim for money judgment against the Fishes pursuant to the Fish Second Deed of Trust Guaranty (the "Second Promissory Note claims"). [2] In short, the plaintiffs allege in this action that the defendants have engaged in a fraudulent scheme—foreclosure by BLT (an alleged alter ego of Mr. Fish) on a property owned by UP Franklin (a second alleged alter ego of Mr. Fish)—in order to acquire the Property free and clear of the Second Deed of Trust and to avoid repaying the Second Promissory Note.

The plaintiffs have filed a Motion for Partial Summary Judgment as to the Second Promissory Note claims. The defendants opposed the plaintiffs' motion on the ground that the plaintiffs' motion is premature. The defendants further argue that, because they seek to add a counterclaim against the plaintiffs for fraudulent misrepresentation related to the Purchase Agreement, they should be entitled to engage in discovery related to the counterclaim, and a ruling on the plaintiffs' motion for summary judgment should be deferred. (Docket No. 51.)

The defendants filed their first Motion to Amend/Correct their Answer on April 15, 2014 (Docket No. 55), which the plaintiffs opposed. On August 8, 2014, the court denied the defendants' first Motion to Amend as to their proposed second counterclaim. The court held

---

[2] Additional claims include (3) a specific performance claim against UP Franklin for conveyance of a portion of the property pursuant to the Purchase Agreement and related General Warranty Deed; (4) a claim for money judgment against UP Franklin related to its agreement to hold Tulloss Springs harmless; (5) a claim for money judgment against the Fishes pursuant to the Fish Second Deed of Trust Guaranties as to UP Franklin's performance under the Purchase Agreement; (6) a claim for money judgment against UP Franklin for breach of the duty of good faith and fair dealing; (7) a declaratory judgment that the Fishes and BLT are alter egos of UP Franklin; (8) a declaratory judgment that the First Promissory Note has been paid and the First Deed of Trust has been satisfied; (9) fraud; (10) wrongful foreclosure; (11) money judgment against UP Franklin for contribution and indemnification; and (12) injunctive relief. As to the plaintiffs' request for injunctive relief, after briefing and a hearing, the court issued an Order granting the plaintiffs a preliminary injunction on May 29, 2014. (Docket No. 68).

that, because the proposed counterclaim "includes only vague and conclusory allegations regarding the alleged fraud perpetrated by the plaintiffs," the proposed counterclaim was futile. The court's opinion focused on the defendants' failure to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), particularly their failure to identify the time, place, or specific content of alleged misrepresentations by the plaintiffs, as well as any injuries caused by the transactions induced by the alleged misrepresentations.

Despite the deficiencies of the defendants' first proposed amended pleading, the court's August 8, 2014 Order granted the defendants an opportunity to remedy the defects and file a second motion for leave to amend and deferred consideration of the plaintiffs' partial summary judgment motion. On August 20, 2014, the defendants filed a second Motion for Leave to Amend/Correct their Answer and Counterclaim with an updated proposed second counterclaim.

### III. The Defendants' Proposed Amended Second Answer and Counterclaim

The plaintiffs do not oppose the first counterclaim of the defendants' proposed Amended Answer.[3] The second counterclaim of the proposed Amended Answer (for ease of reference, the "Proposed Counterclaim") is asserted by the Fishes against the Thorburns.

**A. Allegations of the Proposed Counterclaim**

The Proposed Counterclaim relates to a loan allegedly taken out by Mr. Thorburn in 2007. The note, dated July 27, 2007, is in the amount of $1,820,000.00 and marked payable to the Bank of Nashville (the "BON Note"). (Docket No. 76, Ex. 6.) The BON Note appears to be

---

[3] The defendants' first counterclaim is asserted by BLT and seeks a money judgment against the Thorburns related to UP Franklin's default on the First Promissory Note and the Thorburn Guaranties.

either related to or secured by real property located at 1045 Tulloss Road in Franklin, Tennessee.[4]

The chronology of the Proposed Counterclaim is vague and disorganized. Nonetheless, the court will attempt to outline the chronology of the Fishes' claim below.

1. Alleged September 2011 Misrepresentation

The Fishes allege that, as part of the resolution of litigation in Tennessee state court related to the BON Note, on September 23, 2011, Mr. Fish and Mr. Thorburn agreed that "Mr. Fish . . . regularly [would pay] Mr. Thorburn $14,000.00" for the purpose of paying monthly obligations due to the Bank of Nashville by Mr. Thorburn under the BON Note. The Fishes appear to allege that, either in conjunction with the state court settlement or shortly before, Mr. Thorburn orally misrepresented to Mr. Fish that $14,000.00 was the amount of the monthly payment obligation (the "September 2011 Misrepresentation").

2. Payments Made

The Fishes further allege that Mr. and Mrs. Fish made payments in the amount of $14,000.00 beginning on October 1, 2008, and continuing monthly thereafter until a final payment was made on July 7, 2011—over two months prior to the September 2011 Misrepresentation.

3. Additional Allegations

The Fishes allege that, at some unknown point in time, they learned that Mr. Thorburn's oral representation as to the monthly payments owed under the BON Note was inaccurate. They

---

[4] 1045 Tulloss Road appears to be an entirely different piece of real property than the Property, which is located at 1071 Tulloss Road. Neither party has explained the connection between the two properties, the relationship among the parties and the property located at 1045 Tulloss Road, or how the BON Note may impact the debts and liabilities of the Property at 1071 Tulloss Road.

allege that, because of the misrepresentation, they overpaid $51,284.10 to Mr. Thorburn. The Fishes further allege that they "relied, to their detriment," on the representations of Mr. Thorburn and/or Tulloss Springs when they entered into the Purchase Agreement. The Proposed Counterclaim alleges that the Fishes were damaged by the misrepresentations because (1) not all funds provided by the Fishes were used for the purposes represented by Mr. Thorburn; and (2) the debts and obligations of Tulloss Springs were misrepresented, and such misrepresentations induced the Fishes to enter into the Purchase Agreement.

## ANALYSIS

**I.	Defendants' Second Motion for Leave to Amend**

**A. Standard**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id*. at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the

non-moving party, or futility of the proposed amendment. *Id.*; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-82 (6th Cir. 1993); *see Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Kottmyer v. Maas*, 436 F.3d 684, 691-92 (6th Cir. 2006).

Here, the plaintiffs oppose the defendants' Motion to Amend on the ground that the Proposed Counterclaim remains futile. Specifically, the plaintiffs argue that (1) the Fishes have not pled that they relied on the September 2011 Misrepresentation because all payments were made prior to the misrepresentation; (2) any misrepresentation related to the payments must have been made in 2008 and, therefore, the Fishes' counterclaim is barred by Tennessee's statute of limitations for common law fraud; (3) any misrepresentation made in September 2011 could not have been a misrepresentation of material fact because it (a) could not relate to the payments, made before September 2011, and (b) could not relate to the Purchase Agreement, which is unrelated to the BON Note; and (4) the Proposed Counterclaim is vague and, therefore, it fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).

### B. The Proposed Counterclaim

#### 1. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure states that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." The Sixth Circuit has explained the overarching purpose of Rule 9(b):

> [The rule] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: "to provide a defendant fair

> notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 523 F.3d 496, 504 (6th Cir. 2008). "So long as a [claimant] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the [opposing party] to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444-45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Although considered a heightened pleading standard, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012).

2. <u>Futility of the Proposed Second Counterclaim</u>

Upon review of the Proposed Counterclaim, the court concludes that the defendants have failed to cure the defects identified in the court's August 8, 2014 Order.

As a general matter, the allegations set forth by the Proposed Counterclaim are impermissibly vague and therefore, fail to plead a viable claim for fraud under Tennessee law. The elements of common law fraud in Tennessee are: (1) a false misrepresentation, (2) made knowingly, without belief in its truth, or recklessly, (3) of a material fact, (4) which induces reasonable reliance, and (5) which results in damages. *Ockerman v. May Zima & Co.*, 27 F.3d 1151, 1156 n.5 (6th Cir. 1994). At a minimum, the Fishes have failed to specifically plead (1)

how they relied on the September 2011 Misrepresentation in making payments three years prior to the misrepresentation; (2) how they relied on the September 2011 Misrepresentation as to the Purchase Agreement; and (3) how the September 2011 Misrepresentation was material to the Purchase Agreement or the monthly payments of $14,000.00 between 2008 and 2011. For these reasons, the Proposed Counterclaim is insufficiently specific.

The only misrepresentation expressly alleged by the defendants—Mr. Thorburn's representation of his monthly payment obligations with regard to the BON Note—occurred on or around September 23, 2011. The September 2011 Misrepresentation, therefore, took place nearly three years *after* the first alleged payment was made in reliance on the misrepresentation. This allegation, by its illogicality alone, fails to plead that the Fishes reasonably relied on the September 2011 Misrepresentation when making the $14,000.00 payments. Moreover, the Fishes have otherwise failed to specifically plead how they relied on the September 2011 Misrepresentation with regard to the Purchase Agreement, dated September 8, 2011 (apparently also before the September 2011 Misrepresentation allegedly occurred). As to the Purchase Agreement, the Fishes offer only conclusory allegations that they "relied, to their detriment," on the representations of the Thorburns. These allegations, which are based upon an untenable timeline, are insufficient to plead that a false misrepresentation occurred and that the Fishes reasonably relied upon the misrepresentation to their own detriment. For this reason alone, the court concludes that the Proposed Counterclaim is futile.

Similarly, the Fishes have failed to sufficiently plead that the September 2011 Misrepresentation, which relates to Mr. Thorburn's obligations under the BON Note, was material to (1) the monthly payments of $14,000.00, which were initiated three years prior to the alleged misrepresentation, or (2) the Purchase Agreement. The Purchase Agreement and its

11

related documents, including the First and Second Promissory Notes, make no mention of the BON Note. Moreover, the BON Note appears to be secured by an entirely different piece of property than the Property at issue in the Purchase Agreement. The Proposed Counterclaim fails to mention, let alone address or resolve, the materiality of the September 2011 Misrepresentation as to the transactions that allegedly caused injury to the Fishes.

Moreover, even if the court were to (generously) infer that the defendants intended to allege a second misrepresentation that would have occurred *prior* to the initiation of payments in 2008, the Proposed Counterclaim remains futile. Tennessee imposes a three-year statute of limitations on common law actions related to deceit, including claims asserting fraud in the inducement of a contract—like the Proposed Counterclaim. T.C.A. § 28-3-105. *See also Vance v. Schulder*, 547 S.W.2d 927, 930-32 (Tenn. 1977). Accordingly, even if the defendants had specifically alleged that Mr. Thorburn made a false misrepresentation as to the obligations of the BON Note in 2007 or 2008, their claim is time-barred.

As a final matter, the Fishes' allegations as to the time, place, and content of the alleged misrepresentations do not meet the heightened pleading standard of Rule 9(b). The most particularity alleged by the Fishes is that "Mr. Fish entered into an agreement in early September 2011 in which Mr. Fish regularly paid Mr. Thorburn $14,000.00 to Mr. Thorburn and/or Tulloss Springs" and that "the amount was determined by oral statements made by Mr. Thorburn to Mr. Fish that $14,000.00 was the amount" due under the BON Note. The defendants fail to plead *when* Mr. Thorburn made oral statements regarding the amount due under the BON Note or *where* the misrepresentations took place. The court remains skeptical that, without discovery, the defendants are unable to even estimate with greater particularity the time, date, and content of the oral statements allegedly made by Mr. Thorburn.

12

For these reasons, the Proposed Counterclaim fails to state a claim for fraud with the specificity required by Rule 9(b), and the defendants' second Motion to Amend their Answer will be denied as futile. The defendants will be ordered to file an amended pleading including only the proposed first counterclaim by BLT, which is unopposed.

## II. The Plaintiffs' Motion for Partial Summary Judgment

### A. Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003.) The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. *Id.*

Accordingly, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of its claims. To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving party makes its initial showing, the burden shifts to the non-moving party to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*,

578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

**B. Application**

The plaintiffs have filed a motion for partial summary judgment as to the Second Promissory Note claims. The plaintiffs' claims are based upon the undisputed terms of the note, which provide:

> FOR VALUE RECEIVED, the undersigned, UP DEVELOPMENT FRANKLIN, LLC, a Tennessee Limited Liability Company . . . *promises to pay* to the order of TULLOSS SPRINGS, LLC . . . *the principal sum of THREE HUNDRED TWENTY-FIVE THOUSAND FIVE HUNDRED TWO and 82/100 DOLLARS* ($325,502.82) along with interest at a rate equal to 5% per annum as follows:
>
> Principal payments in the amount of FIFTY THOUSAND and no/100 DOLLARS ($50,000.00) plus accrued interest at a rate equal to 5% per annum each shall be payable on the date six (6) months after the date hereof and then on the date twelve (12) months after the date hereof and then on the date eighteen (18) months after the date hereof. The remaining balance of the indebtedness plus accrued interest at a rate equal to 5% per annum shall balloon and become due and payable two (2) years after the date hereof.
>
> *There is no grace period allowed for any installment to be made.* If Lender does not receive the installment on date when same is due, a late fee in the amount of five percent (5%) of the installment shall automatically be added to the required payment and any payment plus the late fee amount shall accrue interest at a rate of ten percent (10%) per annum until paid.

14

(Docket No. 1, Ex. H (emphases added).) The Second Promissory Note is dated September 8, 2011.

The defendants do not dispute that they entered into the Second Promissory Note and the Fish Second Deed of Trust Guaranty.[5] In fact, the defendants' only argument in opposition to the pending dispositive motion is that the Fishes' counterclaim "negat[es] the basis" for summary judgment. The defendants further contend that the amount owed by UP Franklin and the Fishes under the Second Promissory Note should be offset by (1) the amount allegedly owed to BLT under the First Promissory Note and (2) losses suffered by the Fishes as a result of the Thorburns' alleged fraud, as described in the Proposed Counterclaim.

As an initial matter, the court has concluded that the Proposed Counterclaim is futile; accordingly, the defendants' arguments that their counterclaim undermines the plaintiffs' summary judgment motion or entitles them to an "offset" in judgment are without merit.[6] Moreover, even if the defendants' proposed allegations were viable, the court notes that, at the summary judgment stage, mere allegations—without supporting evidence beyond the pleadings—are insufficient to demonstrate that a genuine issue of material fact exists for trial. *Moldowan*, 578 F.3d at 374. Accordingly, the defendants have failed to present colorable evidence to demonstrate that a genuine issue of fact exists as to the Second Promissory Note claims.

Next, the defendants' argument that the plaintiffs' motion is premature is without merit. The parties need not engage in discovery related to the deficient Proposed Counterclaim and they

---

[5] The defendants also do not contest the enforceability of the note and the guaranty, nor the fact that the note became due in September 2013.

[6] Mr. Fish's self-serving deposition testimony alleging misrepresentations by the plaintiffs, which took place years before the execution of the Second Promissory Note, does not affect the court's determination of whether the plaintiffs are entitled to summary judgment as to the monies owed under the Second Promissory Note.

have had ample time to engage in discovery as to the Second Promissory Note claims. Finally, at this stage, the court need not reach the defendants' argument that the amount owed by the defendants under the Second Promissory Note should be "offset" by the amount allegedly owed by the plaintiffs under the First Promissory Note. Although BLT's proposed counterclaim seeking payment from the plaintiffs under the Thorburn Guaranties will proceed, the court has made no determination as to whether the plaintiffs are, in fact, liable for money owed under the First Promissory Note.

On the contrary, the record clearly establishes that the defendants are liable to the plaintiffs under the Second Promissory Note. It is undisputed that (1) the parties executed the Second Promissory Note in September 2011, providing that UP Franklin owed a debt to Tulloss Springs of $325,502.82, plus interest and other costs; (2) the Fishes executed personal guaranties, promising to pay UP Franklin's debt under the Second Promissory Note in case of default; (3) the debt became due in September 2013; and (4) the debt has not been paid. Based upon the undisputed facts in the record, the plaintiffs are entitled to summary judgment as to the Second Promissory Note claims.

## CONCLUSION

For the reasons stated herein, the defendants' Motion to Amend/Correct Answer to Complaint (Docket No. 76) will be denied and the plaintiffs' Motion for Partial Summary Judgment (Docket No. 49) will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge